IN THE COURT OF COMMON PLEAS OF
BRADFORD COUNTY, PENNSYLVANIA
42ND JUDICIAL DISTRICT

VALLEY ROD & GUN CLUB      :
c/o 300 Center Street         :
Old Forge, PA 18518          :
                               :
      Plaintiff            :
                               :
vs.                        : NO. _____
                               :
CHESAPEAKE APPALACHIAN LLC  :
and CHESAPEAKE ENERGY      :
CORPORATION               :
6100 N. Western Avenue       :
Oklahoma City, OK 73118     :
                               :
      Defendant           :
And                           :
                               :
ANADARKO E & P COMPANY LP and :
STATOIL ONSHORE PROPERTIES INC. :
Successor to Statoil Hydro USA Onshore :
Propane, Inc. c/o P.O. Box 1330    :
Houston, TX 77251-1330     :
                               :
      Co-Defendant       :
                               :

*2013 FEB 5 PM 2 05*

## NOTICE

     You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.



EXHIBIT
A

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

BRADFORD COUNTY PUBLIC DEFENDER OFFICE
Bradford County Courthouse
301 Main Street
Towanda, PA 18848
570-265-1713

SPALL, RYDZEWSKI, ANDERSON, LALLEY & TUNIS, P.C.

By_____
JOSEPH R. RYDZEWSKI, ESQUIRE
Attorney for Plaintiff
ID #17652
2573 Route 6
Hawley, PA 18428
(570) 226-6229

IN THE COURT OF COMMON PLEAS OF
BRADFORD COUNTY, PENNSYLVANIA
42ND JUDICIAL DISTRICT

VALLEY ROD & GUN CLUB   :
c/o 300 Center Street     :
Old Forge, PA 18518     :
            :
  Plaintiff      :
vs.         : NO. _____ -CIVIL-2013
            :
CHESAPEAKE APPALACHIAN LLC :
and  CHESAPEAKE ENERGY  :
CORPORATION      :
6100 N. Western Avenue    :
Oklahoma City, OK  73118   :
            :
  Defendant     :
And          :
            :
ANADARKO E & P COMPANY LP and :
STATOIL ONSHORE PROPERTIES INC. :
Successor to Statoil Hydro USA Onshore :
Propane, Inc. c/o P.O. Box 1330,  :
Houston, TX 77251-1330   :
            :
  Co-Defendant    :
            :

## **COMPLAINT**

  PLAINTIFF, VALLEY ROD & GUN CLUB, by and through this attorney, Joseph R.

Rydzewski, Esquire, of Spall, Rydzewski, Anderson, Lalley & Tunis, PC files this Complaint

seeking damages against the Defendants and in support states:

1. The Plaintiffs, Valley Rod & Gun Club, is a Pennsylvania Not for Profit Corporation, owning acreage and a lodge, County Tax ID 58-126-114, as recorded in Book 565 at pp 406, et. seq., in Wilmot Township, Bradford County, PA.

2. The Defendant, Chesapeake Appalachian LLC a/k/a Chesapeake Energy Corporation, ("Chesapeake") is an Oklahoma Limited Liability Company with their principal offices at 6100 N. Western Avenue, Oklahoma City, OK 73118. The Co-Defendants, Anadarko E&P Company ("Anadarko") and Statoil Onshore Properties ("Statoil") are foreign corporations with their principal offices at _____.

3. At all relevant times, Plaintiff owns the real estate located aforesaid, in Wilmot Township, Bradford County, Pennsylvania, that is a subject of this Complaint.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in the Court of Common Pleas of Bradford County, pursuant to Pa.R.Civ.P. 1006 (a)(s) in that suit is brought in the County in which the property is located and relief is sought with respect to the property.

## FACTS

5. Under a Lease Agreement dated June 20, 2006, Chesapeake's predecessor, Anadarko/Statoil, agreed with Plaintiff to install well pads on the Plaintiff's lands.

6. A true and correct copy of the Lease is attached hereto as Exhibit "A", now assigned partially to Defendant, Chesapeake.

7. All claims against all Defendants arise out of, or are related to, the construction now completed, and installation of a well pad on Plaintiff's property.

8. The purpose of the lease for 640 A and its recitations was to promote public safety, protect environmental features, and to protect the hunting, farming, recreation and

business operation of Plaintiff now and in the future and to protect its land, fields, farming, similar use and values; prevent encroachments on the farming fields or hunting lands and any, or permit future operation of a potential quarry and to meet federal, state and local laws, regulations. rules or ordinances relating to public health. safety and welfare and to permit the proper and full operation of the green space. lodge, hunting lands, foresting, and potential quarry now and in the future.

9. The Defendants, Chesapeake, as part of its installation and access to the pad, secured a subcontractor for work on the Plaintiff's surface lands, including roads, access, drainage, and a highly elevated well pad.

## DEFENDANT'S VIOLATIONS

10. Defendants, pursuant to the Lease (Exhibit "A"), were familiar with the farm, field, forestry and hunting lands, shooting range, lodge/home and quarry stone, their location and the potential use of a stone quarry on 640 A.

11. As a result, Plaintiff asked Defendants originally to locate the pad in an area, southern of the area on Plaintiff's property where it's located, outside of the current or future quarry stone, farm, fields, shooting range, hunting lodge, etc., on the subject property.

12. Notwithstanding, their knowledge of the farm, fields, land, shooting range, lodge/home, quarry stone, potential quarry, and a potential quarry permit and the applicable BMR regulations issued by the Commonwealth, Defendants have knowingly and willfully located the pad within several feet of the quarry stone and have installed the pads, roads and drainage using Plaintiff's stone, fill, rock, trees and mulch, and have damaged the

surface farms, fields, lands, forestry, buildings. shooting range. hunting lands, and wetlands of Plaintiff's property.

13. Prior to installation, Plaintiff advised Defendants of possible problems and requested they place the pad in a different location.

14. Defendants advised Plaintiff that the proposed relocation area could not be done and the pad area would have no impact on the Plaintiff's lands or assets.

15. Further, at some point in the future, Defendants will begin to operate the gas well and use water, drainage, and land vehicles on Plaintiff's property in the areas causing further surface damages to the Plaintiff's lands, buildings, forest and wetland area without compensation ort permission, and then subsequently may place further unauthorized roadways, and/or have already surveyed and stake out for drainage and access location, all on the surface and contrary to Plaintiff's surface rights.

16. At the same time, Defendants have taken or used Plaintiff's stone and back fill and cut and converted trees on Plaintiff's property to build the well pad at its current site without any authorization or Agreement from Plaintiff to do so.  True and correct copies of photographs depicting stone and backfill used for the well pad support and the damages to Plaintiff's vegetation and trees are attached hereto collectively as Exhibit "B".

17. Further, Defendants ignored Plaintiff's request and have allowed various surface uses to continue to persist on the property without agreement in anticipation of using the well and roads in a new, different location than originally requested.

18. As the photographs attached as Exhibit B show, Plaintiff's quarry, stone, backfill, trees and shooting range; forest and hunting lands and buildings have been and will be harmed by Defendants use of Plaintiff's materials and by undertaking various unpermitted

surface uses, including but not limited to, roadway expansion, improper and unauthorized drainage and further stone, fill, and tree removal on Plaintiff's lands in using the same.

19. Defendants' egregious, outrageous, vexatious, willful, wanton, defiant and malicious disregard for Plaintiff's property assets and surface rights; their potential violations of the quarry permit requirements and continual conversion, trespass and degradation of Plaintiff's assets and land, farm, fields, hunting lodge, shooting range, quarry stone and backfill, forest and water ways have caused damage and losses to Plaintiff. This will further require Plaintiff to expend and incur substantial sums, including the costs of substitute material, property restoration, home/lodge repairs, field and farm restoration, forester fees, enforcement fees, relocation costs, plus loss of stone, backfill, and quarry profits, both present and future, plus attorney's fees and such other damages that are permitted by law.

20. Defendants have demonstrated by their abject disregard for the Plaintiff's surface rights, quarry rights and property rights and potential forest, stone and quarry operation, further causing loss now and in the future.

## COUNT I
## TRESPASS

21. Plaintiff incorporates herein by reference all of the foregoing paragraphs as if repeated and realleged herein.

22. Defendants have negligently or intentionally entered upon, or used, or adopted surface land owned by Plaintiff without privilege.

23. By their actions, Defendants have committed and are committing a continuing trespass on surface lands owned by Plaintiff causing continual damage to Plaintiff's property.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court grant the following relief:

a. Award compensatory damages to Plaintiff against Defendants, jointly and severally, for Plaintiff's losses and damages relating to fields, forests and farm, lodge/home damage, shooting range damage, hunting lands damage, tree removal, survey and roadway removal or damage costs, plus loss of stone, backfill, and potential quarry profits, present and future, in an amount in excess of $50,000.00.

b. Award compensatory damages to Plaintiff against Defendants that include, but are not limited to, Plaintiff's enforcement costs, forestry costs, costs to restore Plaintiff's property and costs of litigation in an amount to be determined, all of which when added to the damages claimed in this Complaint exceed the jurisdictional limit of $50,000.00;

c. Award exemplary damages to Plaintiff;

d. Award attorney's fees, expenses and costs to Plaintiff;

## COUNT II
## MISAPPROPRIATION/CONVERSION

24. Plaintiff incorporates herein by reference all of the foregoing paragraphs as if repeated and realleged herein.

25. By engaging in the aforementioned activities, Defendants have made unauthorized, improper, or unlawful use of Plaintiff's property without permission, right, ownership or proper consent or agreement, and for purposes other than that for which the Lease allowed, intended or represented.

26. Plaintiff has made a substantial investment of time, effort, money and other resources into creating forests, the home/hunting lodes, the farm, fields, and hunting lands, shooting range and potential stone, backfill, and potential quarry and quarry lands for future profit and have a clear property right to the same.

27. Defendants have misappropriated the Plaintiff's property and potential quarry operations, and profits pre-suit and future, without compensation and at great expenses and loss to Plaintiff and have injured Plaintiff by their actions.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court grant the following relief:

a. Award compensatory damages to Plaintiff against Defendants, jointly and severally, for Plaintiff's losses and damages relating to house/lodge damage, shooting range damage, hunting lands damage, tree removal, survey and roadway removal or damage costs, loss of stone, backfill, and potential quarry profits, present and future, in an amount in excess of $50,000.00;

b. Award compensatory damages to Plaintiff against Defendants that include, but are not limited to, Plaintiff's enforcement costs, forestry costs, costs to restore Plaintiff's property and costs of litigation in an amount to be determined, all of which when added to the damages claimed in this Complaint exceed the jurisdictional limit of $50,000.00;

c. Award exemplary damages to Plaintiff;

d. Award attorney's fees, expenses and costs to Plaintiff.

SPALL, RYDZEWSKI, ANDERSON, LALLEY & TUNIS, PC

By: _____

JOSEPH R. RYDZEWSKI, ESQUIRE
Attorney for the Plaintiff
ID # 17652
2573 Route 6
Hawley, PA  18428
570-226-6229

## VERIFICATION

I, **JAMES HADDOCK, PRESIDENT,** do hereby verify that the facts set forth in the foregoing COMPLAINT are true and correct to the best of my knowledge, information and belief. I understand that any false statements herein are made subject to the penalties of 18 Pa.C.S.A. Section 4904, regarding unsworn falsifications to authorities.

**VALLEY ROD & GUN CLUB**

**JAMES HADDOCK, President**

January 30, 2013
**DATE**

Exhibit A

PA Rentals 11/05

# OIL AND GAS LEASE

**AGREEMENT,** Made and entered into this **20** day of **July** A.D. **2006** by and

between **Valley Rod and Gun Club**

### c/o David W. Nestorick, 300 Center Street, Old Forge, PA 18518

hereinafter called LESSOR, and **Anadarko E & P Company LP** with offices at 1201 Lake Robbins Drive, The Woodlands, TX 77380 hereinafter called LESSEE.

WITNESSETH, that for and in consideration of one dollar and other good and valuable consideration in hand paid by the said LESSEE, the receipt whereof is hereby acknowledged, and the further consideration of the agreement hereinafter contained, LESSOR and LESSEE agree to the following. LESSOR hereby grants, demises, leases and lets exclusively to LESSEE the oil and gas, including coalbed methane gas, underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for LESSEE, at its election, to explore for, develop, produce, measure and market production from the premises, using methods and techniques which are not restricted to current technology, including the exclusive right to conduct geophysical and other exploratory tests; to conduct dewatering operations upon formations in which LESSEE plans to produce coalbed methane gas; to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, pipelines with appurtenant facilities, necessary or convenient for use in the production and transportation of products from the premises and from neighboring lands, and such rights shall survive the term of this agreement for so long thereafter as operations are continued on this Lease or adjacent lands; to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground regardless of the source thereof, including the injecting of gas therein and removing the same therefrom; to protect stored gas: to operate, maintain, repair, and remove material and equipment.

This Lease covers the premises, all or in part, in the Township(s) of __**Wilmot & Terry**__, County of **Bradford**

and State of _____**Pennsylvania**_____, bounded substantially by lands now or formerly owned as follows:

On the North by: _____Commonwealth of Pennsylvania; Michael Luby; Eleanor Robinson; Jon & Stephanie Robinson_____

On the East by: _____Kim Conner; David & Susan Lynn Fusco; Phillip Vanderpool;_____

On the South by: _____Commonwealth of Pennsylvania_____

On the West by: _____Commonwealth of Pennsylvania_____

Deed Book & Page (for ref. only) **B565 P406**   Tax Map No. (for ref. only) _____**58-126-113; 58-126-114**_____

containing for the purpose of calculating rentals and royalties, (83.25 + 112) **195.25** acres whether actually containing more or less. In addition to the above described land, any and all strings or parcels of land adjoining or contiguous to the above described land and owned or claimed by LESSOR are hereby leased to LESSEE. All tracts or parcels of land leased to LESSEE herein, including strata and horizons underneath the surface thereof, are herein referred to as "the premises." For purposes of this Lease, oil and gas includes all hydrocarbons and other substances produced or associated therewith, including coalbed methane gas.

It is agreed that this Lease shall remain in full force and effect until midnight on the 5th anniversary of the date hereof (the primary term) and as long thereafter as (1) drilling operations continue with due diligence, provided that LESSEE has commenced drilling operations on any portion of the premises or any lands pooled or unitized therewith, within the primary term, (2) an application for a drilling permit is pending with the appropriate authorities, and LESSEE, after grant of such permit, commences drilling operations within a reasonable time thereafter and continues same with due diligence, provided said permit application was filed prior to the expiration of the primary term, (3) oil and gas or either of them is produced or withdrawn from any portion of the premises or any lands pooled or unitized therewith, (4) gas storage operations are conducted in or on any portion of the premises, or (5) a completed oil or gas well would be capable of producing oil or gas from any portion of the premises or any lands pooled or unitized therewith, but for acts of God, unavailability or interruption of markets or pipelines, delays due to pending governmental or regulatory authorization, or any other causes, which have caused LESSEE not to commence production from such well or to suspend production from such well.

## IN CONSIDERATION OF THE PREMISES:

### A. The LESSEE covenants and agrees as follows:

1st – To commence operations for drilling a well on the premises within twelve months of the date hereof or pay to LESSOR on or before such twelve month anniversary and annually thereafter the sum of five dollars ($5.00) per acre leased for each 12 months for which commencement of a well is delayed (such payment may be hereinafter referred to as a delay rental) by cash, check or draft, mailed or delivered on or before the delay rental date, and the depositing of such cash, check or draft in any post office, addressed to the LESSOR (at LESSOR's last known address as shown by LESSEE's records) on or before the delay rental date, shall be deemed payment or tender as herein provided; and it is agreed that commencement of operations for drilling of a well shall be a full liquidation of all delay rental under this provision during the remainder of the term of this Lease.

2nd – LESSEE shall pay the LESSOR on oil and liquid hydrocarbons produced and saved from the premises and used off the premises or lands pooled therewith or sold (whether to an affiliated or non-affiliated purchaser), the market value at the well of one eighth (1/8) of the oil and liquid hydrocarbons so used or sold, or deliver to the credit of LESSOR, free of cost, into tank reservoirs or into the pipeline to which LESSEE may connect his wells the equal one-eighth (1/8th) part of all oil or liquid hydrocarbons produced and saved from the premises, and shall pay the LESSOR on gas, including casinghead gas, coalbed methane gas and other gaseous substances, produced from the premises and used off the premises or lands pooled therewith or in the manufacture of gasoline, or other products therefrom, or sold (whether to an affiliated or non-affiliated purchaser) the market value at the well of one-eighth (1/8th) of the gas so used or sold. In no event shall the gas royalty payable hereunder be computed on the basis of a price the collection of which by LESSEE is unlawful or prohibited by order or regulation of any

1

PA Rentals 11/05

governmental authority having jurisdiction, and market value at the well shall not exceed the amount realized by LESSEE for such production computed at the well. Payment for royalties in accordance herewith shall constitute full compensation for the gas and all of its components. Prior to payment of royalty, LESSOR shall execute a Division Order setting forth LESSOR's interest in production. LESSEE may pay all taxes and fees levied upon LESSOR's royalty share of production of oil and gas, and deduct the amount so paid from any monies payable to LESSOR hereunder. No royalty shall be due on stored gas produced from the premises or on gas produced from a storage formation or formations thereunder.

3rd - If at any time either during or after the primary term hereof there is a well capable of producing gas in paying quantities located upon the premises or on lands pooled therewith but such well is shut-in (whether before or after production) and this lease is not maintained in force by operations, including but not limited to dewatering, or production at any well, by gas storage, or by other activity or event, nevertheless it shall be considered that gas is being produced in paying quantities within the meaning of this lease. On or before the end of the initial year during which this lease is maintained in force for the entire annual period under this paragraph LESSEE shall pay or tender to LESSOR hereunder, or to those entitled to the royalties provided in this lease (as shown by LESSEE's records) at the addresses shown by LESSEE's records, a shut-in royalty equal to $2.00 per acre for the acreage held under this lease (as shown by LESSEE's records) at the time such payment or tender is made. Each subsequent payment or tender shall be made thereafter in like manner and amount on or before the end of each annual period while the lease was maintained in force for the entire annual period under the first sentence of this paragraph. LESSEE's failure to timely or correctly pay or tender the shut-in royalty for any year shall not operate to terminate this lease or serve as a basis for its cancellation, but LESSEE shall correct any erroneous payment or tender, when notified thereof, and if late then LESSEE shall make the correcting payment or tender with interest at the rate of seven (7%) percent per annum to those to whom such shut-in royalty was not timely or correctly paid or tendered. As long as any well is shut-in, it shall be considered for the purposes of maintaining this lease in force that gas is being produced in paying quantities and this lease shall continue in effect both before and after the primary term.

4th - To pay to LESSOR an annual storage rental of $5.00 per acre for the utilization of one or more strata in the premises for storage operations, for so long as any stratum is so utilized, and to give to LESSOR written notice of the use of the premises for storage operations; and it is agreed that said storage rental is in lieu of delay rental and royalty payments, except that storage rental and royalty payments shall be paid simultaneously by LESSEE if LESSEE simultaneously conducts storage operations in one or more strata in the premises and produces oil or gas from one or more other strata; and it is further agreed that the termination of gas storage operations shall be a full liquidation of all storage rental during the remainder of the term of this Lease.

5th - To correct any damages LESSEE may cause to crops, fences or structures as a result of its operations, and to restore, as nearly as reasonably practicable, all surface used by LESSEE to its condition existing as of the date of this lease.

6th - To drill no well within two hundred (200) feet of any dwelling or barn now on the premises without the written consent of the LESSOR.

**B.   The LESSOR covenants and agrees as follows:**

1st - To erect no dwelling or barn within two hundred (200) feet of any producing well drilled on the premises, or within fifty (50) feet of any pipeline, without the written consent of the LESSEE.

2nd - That LESSOR has full title to the premises and to all the oil and gas therein at the time of granting this Lease, and forever warrants title to the leasehold estate hereby conveyed to LESSEE, that LESSEE shall have exclusive, full and quiet possession of the premises for the purposes set forth herein, and that LESSOR shall not interfere in the operations of LESSEE hereunder.

**C.   It is mutually agreed by and between LESSOR and LESSEE as follows:**

1st - LESSEE shall have the right at any time to redeem for LESSOR, or otherwise acquire for payment, any mortgage or any other liens or encumbrances upon the premises that may in any manner affect the LESSEE's interest therein, and LESSEE shall be subrogated in full to all the rights of the holder thereof the same as if LESSEE were the original owner of said mortgage, lien or encumbrance, and LESSEE may reimburse itself by applying to the discharge of any such mortgage, lien or other encumbrance any royalty or rental owed or accruing hereunder.

2nd - LESSEE shall have the exclusive right to employ all or any of the oil or gas strata in the premises for the storage of gas, and may reopen and reclaim any and all abandoned wells on the premises that may have penetrated said strata, or drill new wells on the premises, for the purpose of freely introducing and storing gas in such strata and recovering gas therefrom. A well need not be drilled, reopened or reclaimed on the premises in order for gas to be stored in the premises. LESSEE shall be the sole judge as to whether gas is being stored in the premises, and its determination shall be final and conclusive. Storage of gas hereunder shall not diminish any of LESSEE's other rights under this Lease.

3rd - If LESSOR owns less than all of the oil and gas rights in the premises, LESSOR shall be entitled to only a share of the rentals and royalties equivalent to the proportion of such oil and gas rights owned by LESSOR. If LESSOR owns less than all of the storage rights in the premises, LESSOR shall be entitled to a proportionate share of storage rentals equivalent to the proportion of such storage rights owned by LESSOR. Unless deeds of conveyance or other instruments of record otherwise provide, storage rentals shall be apportioned equally between ownership of the surface of the premises and ownership of the gas rights therein. If LESSEE makes rental or royalty payments to LESSOR in excess of LESSOR's entitlement thereto, LESSOR shall refund to LESSEE such part of all such payments made by LESSEE under this Lease as shall be proportionate to the title not held by LESSOR, and LESSEE may reduce subsequent payments in the same proportion. If LESSOR does not timely provide such refund, LESSEE may also reduce payments to LESSOR by the amount that should have been refunded.

4th - In case of a conveyance or reservation of all or a part of or an undivided interest in the premises, LESSEE shall apportion all entitlements or benefits under the Lease according to interest, acreage, or the terms of the conveyance as the case may be (except as provided in paragraph 5th hereof). Notwithstanding the above, LESSEE may continue to pay or provide all such entitlements or benefits to LESSOR until furnished with the original or a certified copy of the deed of conveyance or other documents or proof of conveyance, so that LESSEE may identify the land or interests conveyed as being all or part of the premises. In case of notice of any adverse claim to the premises or any portion thereof or interest therein, whether or not in

2

PA Rentals 11/05

connection with a conveyance, LESSEE may withhold any or all entitlements or benefits under this Lease until such claims, and the entitlements and benefits are, in LESSEE's sole discretion, decided by compromise, or by final decree of a court of competent jurisdiction, and to this end LESSEE may file a petition for interpleader.

5th – LESSEE shall at any time, upon payment of all monies due hereunder up to such time, have the right to surrender this Lease as to all or part of the premises, and shall thereupon be released and discharged from all payments, obligations, terms, conditions and covenants contained herein, whereupon this Lease shall be null and void as to the entire premises or the part thereof as to which this surrender was made, and rental and royalty payments shall cease or be reduced accordingly. Notwithstanding the above, LESSEE shall still have the right to continue to use any pipeline rights of way herein granted upon a single payment to LESSOR of two dollars ($2) per rod.

6th – LESSEE is hereby granted the right to pool or unitize all or any part of the premises with any other leases, lands, oil or gas estates, or any of them whether owned by the LESSEE or others, so as to create one or more drilling or production units. Such units shall not exceed 640 acres in extent provided, however, that if any Federal or State law, Executive order, rule or regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable on acreage per well, then any such units may embrace as much additional acreage as may be prescribed or as may be used in such allocation or allowable. LESSEE shall record a copy of the unit operation designation in the county in which the premises are located. In order to give effect to the known limits of the oil and gas pool, as such limits may be determined from available geological or scientific information or drilling operations. LESSEE may at any time increase or decrease that portion of the premises that is included in any drilling or production unit, or exclude it altogether, provided that written notice thereof shall be given to LESSOR. As to each such unit, LESSOR agrees to accept, in lieu of the royalty herein described, such proportion of such royalty as the acreage in the premises in such unit bears to the total acreage included in such unit. The commencement, drilling, completion of or production from a well on any portion of a unit including all or some of the premises shall have the same effect upon the terms and conditions of this Lease as if a well were commenced, drilled, completed or producing on the premises.

7th – All expressed or implied covenants of this Lease shall be subject to all federal, state and local laws, orders, rules and regulations. If LESSEE is unable to fulfill any covenant hereunder because of such laws, orders, rules or regulations, acts of God (such as natural disasters), wars, civil disturbances, insurrections, riots, epidemics, equipment or pipeline breakdown or freeze-up, or similar causes not reasonably within the control of LESSEE, for such time as such situation exists, the term of this Lease shall be extended for an equal period of time, and LESSEE's obligation to fulfill its covenants under this Lease shall be suspended for such period of time. This Lease shall not be terminated, in whole or in part, nor Lessee held liable for any failure to perform unless such obligation, covenant or condition remains unsatisfied and unperformed for a period of one year following the express and specific written demand upon Lessee by Lessor for such satisfaction and performance. Neither the service of said notice nor the doing of any acts by Lessee intended to satisfy any of the alleged obligations shall be deemed an admission or presumption that Lessee has failed to perform all its obligations hereunder. No judicial action may be commenced by Lessor for forfeiture of this lease or for damages until after said period. Lessee shall be given a reasonable opportunity after judicial ascertainment to prevent forfeiture by discharging its expressed or implied obligation as established by the court.

8th – This Lease may be executed in counterparts each having the same validity as the original. Should any one or more of the parties named as LESSOR or owning an oil or gas interest in the premises fail to execute this Lease, it nevertheless shall be binding upon all such parties who do execute it as LESSOR.

9th – LESSEE shall have the right to assign this Lease or any interest therein, and the assignee of LESSEE shall have corresponding rights, privileges and obligations with respect thereto. All terms, conditions and covenants between the parties hereto shall extend to their respective heirs, successors, personal representatives and assigns. If LESSEE assigns this Lease or any interest therein, LESSOR will look solely to assignee for fulfillment of all obligations of the Lease or of the interest assigned, as the case may be. Representations other than those contained herein shall not be binding on either party.

10th – LESSEE's exercise of any right or entitlement granted under this Lease shall continue this Lease in full force and effect as to all rights and entitlements granted herein, and each right and entitlement granted herein may be exercised by LESSEE simultaneously with its exercise of one or more other rights and entitlements, or singly, on a continuing basis.

11th – Operations. Whenever used in this lease, the word "operations" (unless specified to the contrary) shall mean operations for and any of the following: dirt work, building of roads and locations, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repairing, abandoning or dewatering (meaning pumping or flowing of water and/or associated hydrocarbons from a well) of a well in search of or in an endeavor to obtain, increase or restore and/or market or render marketable or more valuable production of oil or gas, and/or production, actual or constructive, of oil or gas.

12th - This lease may, at LESSEE'S option, be extended as to all or part of the lands covered hereby for an additional primary term of five (5) years commencing on the date that this lease would have expired but for the extension. LESSEE may exercise its option by paying or tendering to LESSOR an extension payment of Sixty-five dollars ($65.00) per net acre for the land then covered by the extended lease. Said bonus is to be paid or tendered to the LESSOR in the same manner as provided for in paragraph A. 1st hereof with regard to the payment of delay rentals. If LESSEE exercises this option, the primary term of this lease shall be considered to be continuous, commencing on the date of the lease and continuing from that date to the end of the extended primary term.

**IN WITNESS WHEREOF**, this Oil and Gas Lease is executed the day and year first above written.
**WITNESS:**

_____          _____(SEAL)


_____          _____(SEAL)

3

PA Rentals 11/05

## CORPORATE ACKNOWLEDGMENT

State of _____
County of _____

On this the _____ day of _____, 20____, before me a Notary Public, the undersigned officer, personally appeared ____
_____, who acknowledged h____self to be the _____ of _____
_____, a corporation, and that he as such _____
_____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the
name of the corporation by h__self as _____

SEAL.
My commission expires:

_____
(NOTARY PUBLIC)

4

# MEMORANDUM OF OIL AND GAS LEASE

State (situs of land): _____ Pennsylvania _____
County (situs of land): _____ Bradford _____
Town(ship): _____ **Wilmot & Terry** _____
Lessor: _____ **Valley Rod and Gun Club** _____
Lessor's Address: _____ **c/o David W. Nestorick, 300 Center Street, Old Forge, PA 18518** _____
Lessee: _____ Anadarko E & P Company LP,1201 Lake Robbins Drive, The Woodlands,TX 77380 _____

Date Executed: _____ /2006 _____
Effective Date of Lease: _____ /2006 _____
Primary Term of Lease: _____ **five (5) years** _____
Option to Extend Primary Term of Lease: _____ **five (5) years** _____

As of the Effective Date stated above, Lessor, named above, executed and delivered to Lessee, named above, an Oil and Gas Lease (the "Lease") in which Lessor granted, leased, and let to Lessee lands ("the lands") containing _____ (83.25 + 112) **195.25** _____ acres, more or less located in the above named Township, County and State, bounded substantially by lands now or formerly owned as follows:

On the North by: _____ Commonwealth of Pennsylvania; Michael Luby; Eleanor Robinson; Jon & Stephanie Robinson _____

On the East by: _____ Kim Conner; David & Susan Lynn Fusco; Phillip Vanderpool; _____

On the South by: _____ Commonwealth of Pennsylvania _____

On the West by: _____ Commonwealth of Pennsylvania _____

For reference purposes only the lands are identified as Tax Map No(s) _____ **58-126-113; 58-126-114** _____

The Lease grants Lessee the exclusive right to explore for, drill for, produce and market oil, gas and other hydrocarbons from the lands during the term of the Lease. This Memorandum is executed and placed of record in the County in which the lands are located for the purpose of placing all persons on notice of the existence of the Lease.

WITNESS: _____        LESSOR: _____

_____        _____

## CORPORATE ACKNOWLEDGMENT

State of _____
County of _____

On this the _____ day of _____, 20___, before me a Notary Public, the undersigned officer, personally appeared _____, who acknowledged h___self to be the _____ _____ of _____, a corporation, and that he as such _____, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by h___self as _____

SEAL.
My commission expires: _____        (NOTARY PUBLIC)

# RATIFICATION AND AMENDMENT OF OIL AND GAS LEASE

**WHEREAS, Valley Rod and Gun Club, a Pennsylvania Corporation,** having an original address at **c/o D. Nestorick, 300, Center Street, Old Forge, PA, 18518 R 3 - Box 45, Wyalusing, PA 18853,** and a current address at **Attn: James L. Haddock, 756 Main St., Avoca, PA 18641,** as Lessor, previously entered into an Oil and Gas Lease dated **June 20, 2006,** (the "Lease") in which **ANADARKO E&P COMPANY LP,** was the named Lessee, recorded as Instrument No. **200612509,** of the Recorder of Deeds Records of **Bradford** County, **Pennsylvania,** covering **195.25** acres of land, more or less, situated in **Terry and Wilmot** Townships, **Bradford** County, **Pennsylvania,** and described as follows:

> **Property Tax Parcel Identification:**　　　**58-126-113**
> 　　　　　　　　　　　　　　　　　　　　　　　　　**58-126-114**

**WHEREAS,** the Lease is now owned by Anadarko E&P Company LP, a Delaware limited partnership, Chesapeake Appalachia, L.L.C., an Oklahoma limited liability company and Statoil USA Onshore Properties Inc., a Delaware corporation, as successor to StatoilHydro USA Onshore Properties, Inc. ("Lessees"),

**WHEREAS,** said Lease contained the following language in Paragraph 6, Sentence 2:

"Such units shall not exceed 640 acres in extent provided, however, that if any Federal or State law, Executive order, rule or regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable on acreage per well, then any such units may embrace as much additional acreage as may be prescribed or as may be used in such allocation or allowable."

**WHEREAS,** Lessor and Lessees, for their mutual benefit, desire to amend and modify said Lease agreement in order to facilitate the formation of drilling units.

**NOW THEREFORE,** in consideration of the premises and the sum of Ten Dollars ($10.00) paid by Lessees to Lessor, the receipt of which is hereby acknowledged, and of the covenants hereinafter contained,

(A) Lessor and Lessees hereby agree to modify said Lease by substituting "1,280 acres" for "640 acres" in Paragraph 6, Sentence 2.

**LESSOR** ratifies the aforesaid Lease as amended and acknowledges that it is a valid and subsisting Lease and shall remain in full force and effect according to the terms and tenor thereof unless otherwise specifically amended hereby.

This agreement extends to and is binding upon the parties hereto, their respective heirs, successors, administrators, executors and assigns.

## CORPORATE ACKNOWLEDGMENT

STATE OF _____ )
                                       ) SS:
COUNTY OF _____ )

On this, the _____ day of _____, 2011, before me _____, the undersigned officer, personally appeared _____, who acknowledged himself to be the _____ of Anadarko E&P Company LP, a corporation, and that he as such _____, being authorized to do so, executed foregoing instrument for the purpose therein contained by signing the name of the corporation by himself as _____.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                My Commission Expires: _____
                Signature/Notary Public: _____
                Name/Notary Public (print): _____


## CORPORATE ACKNOWLEDGMENT

STATE OF _____ )
                                       ) SS:
COUNTY OF _____ )

On this, the _____ day of _____, 2011, before me _____, the undersigned officer, personally appeared _____, who acknowledged himself to be the _____ of Chesapeake Appalachia, L.L.C., a corporation, and that he as such _____, being authorized to do so, executed foregoing instrument for the purpose therein contained by signing the name of the corporation by himself as _____.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                My Commission Expires: _____
                Signature/Notary Public: _____
                Name/Notary Public (print): _____


## CORPORATE ACKNOWLEDGMENT

STATE OF _____ )
                                       ) SS:
COUNTY OF _____ )

On this, the _____ day of _____, 2011, before me _____, the undersigned officer, personally appeared _____, who acknowledged himself to be the _____ of Statoil USA Onshore Properties Inc., a corporation, and that he as such _____, being authorized to do so, executed foregoing instrument for the purpose therein contained by signing the name of the corporation by himself as _____.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                My Commission Expires: _____
                Signature/Notary Public: _____
                Name/Notary Public (print): _____


Recorder:  Please return to
Chesapeake Appalachia, L.L.C.
6100 N. Western Ave.
Oklahoma City, OK  73118

This agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Lease and all of which, when taken together, will be deemed to constitute one and the same agreement.

**WITNESS** the following signatures and seals all effective as of the day of the Lease.

**VALLEY ROD AND GUN CLUB,**

**a Pennsylvania Corporation**

By: _____
Its:

By: _____
Its:

**ANADARKO E&P COMPANY LP**

By: _____
Its:

**CHESAPEAKE APPALACHIA, L.L.C.**

By: _____
Its:

**STATOIL USA ONSHORE PROPERTIES INC.**

By: _____
Its:

**CORPORATE ACKNOWLEDGMENT**

STATE OF _____  )
                                        ) SS:
COUNTY OF _____  )

On this, the _____ day of _____, 2011, before me _____, the undersigned officer, personally appeared _____, who acknowledged himself to be the _____ of Valley Rod and Gun Club, a Pennsylvania Corporation, and that he as such _____, being authorized to do so, executed foregoing instrument for the purpose therein contained by signing the name of the corporation by himself as _____.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: _____
Signature/Notary Public: _____
Name/Notary Public (print): _____



**Chesapeake**
ENERGY

*11-8-10*

*MR NESTORICK,*

*I TRIED TO CALL YOU BUT THE NUMBERS I LOCATED DID NOT WORK.*

*570-457-3308*
*570-457-2197*

*PLEASE CALL ME.*

*THANKS*
*JEFF SCARBORO*
*570-637-7832*

*REF: VRGC WELL PAD*

November 8, 2010

VIA:  Certified Mail (7009 0820 0002 1617 2344)

**Valley Rod and Gun Club**
C/O: D. Nestorick
300 Center Street
Old Forge, PA 18518

Re:    **Chesapeake's Proposed VRGC (NEO 145) Well Pad**
        Tax Map # 58-126-114
        Wilmot Township
        Bradford County, PA

Dear Mr. Nestorick:

Please find this letter as notice that Chesapeake Appalachia, L.L.C. ("Chesapeake") is planning to drill multiple oil and gas wells on the above captioned lands per a lease granted on July 20, 2006.

Feel free to contact me within five days after you receive this letter to discuss any questions you might have.

Best regards,

**Chesapeake Appalachia, L.L.C.**

Jeff Scarboro, Field Representative
(O) 570-265-6525, Extension 83955
(C)  570-637-7832

Chesapeake Energy Corporation
RR 2, Box 73B • Towanda, PA 18848
570.265.6525, ext 83955 • fax 570.265.6539 • cell 570.637.7832 • jeff.scarboro@chk.com

ANADARKO E&P Company LP   1201 LAKE ROBBINS DRIVE, THE WOODLANDS, TEXAS 77380
P.O. BOX 1330  HOUSTON, TEXAS 77251-1330  U.S.A.  PH. (832)636-1000



June 15, 2011


VALLEY ROD AND GUN CLUB ATTN JAMES L HADDOCK, TREASURER
756 MAIN ST
AVOCA, PA 18641

CERTIFIED MAIL –7006 3450 0003 4996 3474

Re:   Option to Extend Lease
      Oil and Gas Lease dated 7/20/2006
      BRADFORD, Pennsylvania
      PA-000002420

To Whom It May Concern:

Pursuant to the terms of the captioned lease, enclosed is Anadarko's check # 30056381
dated 5/26/2011 in the amount of $12691.25 to extend the primary term of this lease for
an additional five (5) years.

Upon receipt of this letter and the enclosed check, please acknowledge receipt of
same by signing in the space provided below and returning one copy of this letter in
the enclosed postage paid envelope.

Any questions you have in this regard can be directed to Gorden Campbell at (832)
636-8774, or by email to Gorden.Campbell@anadarko.com.

Sincerely,

ANADARKO E&P COMPANY LP



RECEIVED this ____ day of _____, 2011.

Signed:    _____    _____

Printed Name: _____  __ _____

2011-06-27 13:27                                    >> 607.763.9211                    P 3/3

*ANADARKO E&P Company LP   1201 LAKE ROBBINS DRIVE, THE WOODLANDS, TEXAS 77380*
*P.O. BOX 1330 HOUSTON, TEXAS 77251-1330 U.S.A.   PH. (832)636-1000*



June 15, 2011

VALLEY ROD AND GUN CLUB ATTN JAMES L HADDOCK, TREASURER
756 MAIN ST
AVOCA, PA 18641

CERTIFIED MAIL –7006 3450 0003 4996 3474

Re:     Option to Extend Lease
        Oil and Gas Lease dated 7/20/2006
        BRADFORD, Pennsylvania
        PA-000002420

To Whom It May Concern:

Pursuant to the terms of the captioned lease, enclosed is Anadarko's check # 30056381
dated 5/26/2011 in the amount of $12691.25 to extend the primary term of this lease for
an additional five (5) years.

Upon receipt of this letter and the enclosed check, please acknowledge receipt of
same by signing in the space provided below and returning one copy of this letter in
the enclosed postage paid envelope.

Any questions you have in this regard can be directed to Gorden Campbell at (832)
636-8774, or by email to Gorden.Campbell@anadarko.com.

Sincerely,

ANADARKO E&P COMPANY LP


RECEIVED this ____ day of _____ , 2011.

Signed:     _____     _____

Printed Name: _____ ___ _____

Exhibit B











