**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VALLEY ROD & GUN CLUB, | CIVIL ACTION NO. 3:CV-13-0725 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| CHESAPEAKE APPALACHIA, LLC, | |
| Defendant, | |
| ANADARKO E&P COMPANY, LP and STATOIL ONSHORE PROPERTIES, INC., | |
| Co-Defendants. | |

## **MEMORANDUM**

Presently before the Court are motions to dismiss Plaintiff Valley Rod & Gun Club's Complaint filed by Chesapeake Appalachia, LLC ("Chesapeake) (Doc. 4) and Anadarko E&P Onshore LLC, formerly Anadarko E&P Company, LP ("Anadarko"). (Doc. 7.) The motions to dismiss will be granted in part and denied in part. Since the Complaint adequately states a misappropriation/conversion claim, Plaintiff will be permitted to proceed on Count II of the Complaint. But, because Count I of the Complaint fails to state a claim upon which relief can be granted, the trespass claim will be dismissed.

## **I. Background**

The facts as alleged in the Complaint are as follows:

Plaintiff Valley Rod & Gun Club, a Pennsylvania not-for-profit corporation, owns acreage and a lodge in Wilmot Township, Bradford County, Pennsylvania. (*Compl.*, ¶ 1.) Plaintiff executed an Oil and Gas Lease (the "Lease") in favor of Chesapeake's predecessor, Anadarko/Statoil. (*Id.* at ¶ 5.) Among other terms, the Lease provides:

> Lessor hereby grants, demises, leases and lets exclusively to Lessee the oil and gas, including coalbed methane gas, underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for

> Lessee, at its election, to explore for, develop, produce, measure and market production from the premises, using methods and techniques which are not restricted to current technology, including the exclusive right to conduct geophysical and other exploratory tests; to conduct dewatering operations upon formations in which Lessee plans to produce coalbed methane gas; to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, pipelines with appurtenant facilities, necessary or convenient for use in the production and transportation of products from the premises and from neighboring lands, and such rights shall survive the term of this agreement for so long thereafter as operations are continued on this Lease or adjacent lands; to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground regardless of the source thereof, including the injecting of gas therein and removing the same therefrom; to protect stored gas; to operate, maintain, repair, and remove material and equipment.

(*Lease*.) The Lease and its recitations were also meant to promote public safety, protect environmental features, and to protect the hunting, farming, recreation, and business operations of Plaintiff. (*Compl*., ¶ 8.)

Pursuant to the terms of the Lease, Defendants were familiar with the location on the property of a farm, field, forestry and hunting lands, shooting range, and lodge/home, as well as the potential use of a stone quarry, all of which Plaintiff made a substantial investment of time, effort, and money for future profit. (*Id*. at ¶¶ 10, 26.) Plaintiff requested Defendants to locate the pad in the southern area of the property away from the quarry stone, farm, fields, shooting range, and hunting lodge. (*Id*. at ¶ 11.) The proposed location was unsuitable to Defendants. (*Id*. at ¶¶ 13-14.) Defendants instead located the pad within several feet of the quarry stone, and Defendants have damaged the surface farms, fields, lands, forestry, buildings, shooting range, hunting lands, and wetlands of the property. (*Id*. at ¶ 12.) At some point in the future, Defendants will begin to operate the gas well and use water, drainage, and land vehicles which will cause further damage to Plaintiff's land, buildings, forest, and wetlands without compensation or permission. (*Id*. at ¶ 15.)

Chesapeake, as part of its installation and access to its well pad, obtained a subcontractor to construct roads, drainage, and the pad on Plaintiff's property. (*Id*. at ¶ 9.) In constructing the pad, roads, and drainage, Defendants used Plaintiff's stone, fill, rock,

2

trees, and mulch. (*Id*. at ¶¶ 12, 16.) The use of these materials was without permission, right, or ownership, and for purposes other than that for which the Lease allowed, intended, or represented. (*Id*. at ¶ 25.) Defendants further misappropriated Plaintiff's quarry operations and profits without compensation and at a great expense and loss to Plaintiff. (*Id*. at ¶ 27.)

Based on the foregoing events, Plaintiff commenced this action in the Court of Common Pleas of Bradford County, Pennsylvania. (Doc. 1, Ex. A.) The Complaint consists of two counts. Count I asserts a trespass claim against Defendants. (*Compl*.) Count II asserts a claim for misappropriation/conversion. (*Id*.)

On March 19, 2013, the action was removed to this Court. Subsequently, on March 26, 2013, both Anadarko and Chesapeake filed motions to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motions to dismiss are now fully briefed and ripe for disposition.

## II. Discussion

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The

statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-

4

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Count I- Trespass**

Plaintiff asserts a claim for trespass in Count I of the Complaint. The parties agree that a trespass is defined under Pennsylvania law as "an unprivileged, intentional intrusion upon land in possession of another." *United States v. Union Corp.*, 277 F. Supp.2 d 478, 495 (E.D. Pa. 2003); *Graham Oil Co. v. B.P. Oil Co.*, 885 F. Supp. 716, 725 (W.D. Pa. 1994). In order to maintain an action in trespass, "a plaintiff must have had the right to exclusive use and possession of the property at issue." *Graham*, 885 F. Supp. at 725 (citing *Ne. Women's Ctr., Inc. v. McMonagle*, 670 F. Supp. 1300, 1311 (E.D. Pa. 1987)). Here, Defendants insist that an action for trespass cannot lie under Pennsylvania law against a lessee that lawfully enters the lessor's property. Conversely, Plaintiff maintains that Defendants trespassed on the "unleased surface of [its] lands." (Doc. 15, 4.)

In support of their motions, Defendants argue that Plaintiff is unable to state a trespass claim in this case under Pennsylvania law based on *Graham* and *Roth v. Cabot*

*Oil & Gas Corp.*, - - - F. Supp. 2d - - -, 2013 WL 358176 (M.D. Pa. Jan. 30, 2013). In *Graham*, the defendant leased property from the plaintiff. *See Graham*, 885 F. Supp. at 718. The property was used as a gasoline station and service center. After the defendant informed the plaintiff that the lease would not be renewed, the parties became aware of subsurface contamination on the plaintiff's property. *See id*. Among the twelve causes of action asserted by the plaintiff was a trespass claim under Pennsylvania law. *See id*. at 719.

The *Graham* court granted the defendant's motion to dismiss the trespass claim. Specifically, the court recognized that the plaintiff surrendered exclusive use and possession of the property to the defendant under the terms of the lease. As a result, the court concluded that the plaintiff could not "maintain an action in trespass based upon any of [the defendant's] alleged activities during the term of the lease." *Id*. at 725. Moreover, it was "undisputed that the contamination of the property occurred during the lease term and, therefore, [the plaintiff] should not be permitted to recover in its action for trespass against [the defendant]." *Id*.

Recently, Judge Jones of this Court applied *Graham* to dismiss a trespass claim analogous to that advanced in the instant action. In *Roth*, Cabot Oil & Gas entered into an oil and gas lease with the plaintiffs to obtain the legal right to drill and extract natural gas from the plaintiffs' property. *See Roth*, 2013 WL 358176, at *3. The plaintiffs continued to live on the leased lands, and the defendants were granted only limited access to the property. *See id*. at *15. Prior to the commencement of drilling on the plaintiffs' property, their groundwater supply always appeared clean. *See id*. at *3. But, after drilling began, the groundwater supply diminished in quality. *See id*. at *5. The plaintiffs then commenced the action asserting claims for negligence, negligence *per se*, private nuisance, strict liability, trespass, inconvenience and discomfort, breach of contract, and fraudulent misrepresentation and inducement. *See id*. The plaintiffs maintained that the defendants

6

were responsible for allowing methane and other harmful contaminants to enter their water supply. *Id*. The defendants filed a motion to dismiss the plaintiffs' complaint in its entirety. *See id*. at *1.

With respect to the trespass claim, Judge Jones, relying on *Graham*, concluded that the plaintiffs failed to state a claim upon which relief could be granted. *See id*. at *15. Even though the defendant in *Graham* had been granted exclusive use of the contaminated property while the defendant in *Roth* was granted only limited access to the property, this distinction was insignificant. *See id*. Rather, "[t]he crux of *Graham* is that where a lessee is 'authorized to be on the premises' or 'authorized to be in possession of the premises,' a trespass action simply cannot lie against the lessee who then lawfully enters the property." *Id*. (quoting *Graham*, 885 F. Supp. at 725). In reaching this conclusion, Judge Jones emphasized that "[t]his interpretation is amply supported by general principles of trespass law as developed in the Pennsylvania courts." *Id*. (citing *Gedekoh v. Peoples Natural Gas Co.*, 183 Pa. Super. 511, 133 A.2d 283, 284 (Pa. Super. 1957) ("A right of entry constitutes an absolute defense to an action in trespass.")). Thus, because Pennsylvania law "offer[ed] copious other means for the Plaintiffs to seek redress for their alleged harms," the trespass claim was dismissed. *Id*.

Plaintiff's oppositions to Defendants' motions do not discuss the effect of *Graham* or *Roth* to this action. Rather, Plaintiff simply asserts that the issue of "privilege" raises a factual question. Moreover, Plaintiff argues that a trespass cause of action is a proper claim for cutting timber, quarrying stone, increasing the flow of water over land, or casting pollution upon land. *See, e.g., Roncace v. Welsh*, 14 A.2d 616, 618 (Pa. Super. 1944) (defendants liable in trespass for entering plaintiffs' land to bare a coal vein and remove the coal therefrom); *Marlowe v. Lehigh Twp.*, 441 A.2d 497, 501-02 (Pa. Cmwlth. 1982); (property owner may not alter the nature flow of surface water by concentrating it in an

7

artificial channel and discharging it with injurious consequences upon the land of another); *Buckley Motors, Inc. v. Amp, Inc.*, 23 Pa. D. & C. 2d 324 (Pa. Ct. Com. Pl. 1961) (unprivileged throwing of particles on the land of another can be actionable trespass).

The case law cited by Plaintiff is inapplicable to resolution of the instant motions. Specifically, the issue raised here is the viability of a trespass claim against a lessee entering leased premises. The authority identified by Plaintiff, while setting forth general considerations with respect to trespass claims, does not address this issue, rendering these cases inapposite to the motions to dismiss.

In contrast to the authority relied on by Plaintiff, the case law cited by Defendants, particularly *Graham* and *Roth*, is instructive and applicable to the present matter. Significantly, I agree with *Roth*'s interpretation of *Graham* and Pennsylvania trespass law: if a lessee is "authorized to be on the premises" or "authorized to be in possession of the premises," a trespass action cannot lie against the lessee that subsequently enters the property lawfully. *Roth*, 2013 WL 358176, at *15 (citing *Graham*, 885 F. Supp. at 725).

Here, the allegations in the Complaint and the terms of the Lease attached to the Complaint confirm that Defendants were authorized or privileged to enter upon Plaintiff's lands. Specifically, the Complaint alleges that Defendants agreed with Plaintiff to install well pads on Plaintiff's lands. (*Compl.*, ¶ 5.) As part of Defendants' installation of the pads, they obtained a subcontractor to work on the surface of Plaintiff's lands, including constructing roads, access, drainage, and a highly elevated well pad. (*Id*. at ¶ 9.) Of note, the Lease expressly permits Defendants: "to use or install roads, electric power and telephone facilities, pipelines with appurtenant facilities, necessary or convenient for use in the production and transportation of products from the premises and from neighboring lands;" "to use oil, gas, and non-domestic water sources, free of cost;" and "to operate, maintain, repair, and remove material and equipment." (*Lease*.) As stated by Plaintiff, "[a]ll claims

8

against all Defendants arise out of, or are related to, the construction now completed, and installation of a well pad on Plaintiff's property." (*Compl.*, ¶ 7.)

Under these terms, Defendants were privileged to drill and operate wells on the leased lands, as well as to install and use roads on the surface of the lands. Plaintiff's arguments notwithstanding, the Lease, other than a limitation on the drilling of wells within two hundred (200) feet of existing dwellings or barns, (*Lease*, A.6), does not contain a provision restricting the areas or parts of the leased lands which Defendants were permitted to access or otherwise occupy.[1] Defendants, therefore, were authorized to be on the premises. As a result, based on the allegations in the Complaint and the terms of the Lease, Plaintiff cannot demonstrate that Defendants' entry upon its land was without privilege, a necessary element of its trespass claim. Consequently, Plaintiff's trespass claim is not plausible on its face. And, as noted by Judge Jones in *Roth*, while Plaintiff's claim cannot proceed as one for trespass, the law affords other means for it to seek redress for the alleged harms to its lands and property caused by its lessee. *See Roth*, 2013 WL 358176, at *15. Defendants' motion to dismiss Count I of the Complaint will be granted, and the claim will be dismissed with prejudice.[2]

## C. Count II- Misappropriation/Conversion

Conversion, under Pennsylvania law, is defined as "the deprivation of another's right

---

[1] The Complaint also alleges that Plaintiff requested Defendants to drill the well at a different location on the leased lands, but Defendants did not comply with the request. (*Compl.*, ¶¶ 11-14.) Plaintiff, however, has not alleged that Defendants acted outside the scope of the Lease in locating the well.

[2] Although leave to amend should be "freely" granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), denial of leave to amend is appropriate where amendment would be futile. *See, e.g., Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir.2000). Because Plaintiff would not be able to state a viable trespass claim on these facts, amendment of the Complaint would be futile.

9

of property in, or use or possession of, a chattel without the owner's consent and without lawful justification." *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 844 (E.D. Pa. 1993); *see also Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 11-cv-1338, 2013 WL 1180312, at *12 (W.D. Pa. Mar. 20, 2013) ("Under Pennsylvania law, the required elements of a conversion claim are: [(1)] the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, [(2)] without the owner's consent, and [(3)] without lawful justification."). "While specific intent is not required, an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights is necessary to establish the tort." *Chrysler Credit*, 834 F. Supp. at 844. Conversion can therefore result only from an act intended to affect the chattel. *See id.* (citing *Project Development Group v. O.H. Materials Corp.*, 766 F. Supp. 1348, 1355 (W.D. Pa. 1991); *Shonberger v. Oswell*, 365 Pa. Super. 481, 530 A.2d 112, 114 (1987)). A plaintiff may bring a conversion claim "if he or she had either actual or constructive possession or an immediate right to possession of the chattel at the time of the conversion." *Id.* (citing *Eisenhauer v. Clock Towers Associates*, 399 Pa. Super. 238, 582 A.2d 33, 36 (1990)).

A misappropriation of property claim refers to "'the application of another's property or money dishonestly to one's own use.'" *Turevsky v. FixtureOne Corp.*, - - - F. Supp. 2d - - -, 2012 WL 5199368, at *5 (E.D. Pa. Oct. 19, 2012) (quoting *Westport Ins. Corp. v. Hanft & Knight P.C.*, 523 F. Supp. 2d 444, 460 (M.D. Pa. 2007)). In Pennsylvania, a misappropriation claim requires that: (1) the plaintiff "has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that thing as a kind of property right;" (2) the defendant "has appropriated the thing at little or no cost, such that the court can characterize defendant's own actions as reaping where it has not sown;" and (3) the defendant "injured plaintiff by the misappropriation." *Id.* (quoting *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*, 735 A.2d 712,

716 (Pa. Super. 1999)).

Defendants maintain that it is unclear what Plaintiff alleges has been misappropriated or converted. Chesapeake assumes that "Plaintiff contends that the collective Defendants cut and/or trimmed trees, constructed drainage points and engaged in other activities necessary or convenient to access and extract natural gas on the property." (Doc. 16, 11-12.) Similarly, Anadarko maintains that "the gist of Plaintiff's allegation is that Chesapeake cut trees and graded the areas where it constructed the well pads, roads, and other facilities." (Doc. 8, 11.) Both Chesapeake and Anadarko assert that these allegations fail to state a claim because Defendants' conduct was consistent with the terms of the Lease. Stated differently, Defendants contend that they acted as authorized under the Lease, as they characterize their conduct as "grading" or "sitework" necessary and convenient to their construction of roads and wells on Plaintiff's property.

Defendants' motion to dismiss Count II will be denied. Contrary to Defendants' arguments, the Complaint asserts that Defendants did, in fact, exceed the terms of the Lease and convert material on Plaintiff's property. That is, Plaintiff's claim is not, as construed by Defendants, that they simply trimmed trees and graded the roadway on Plaintiff's property. Rather, Plaintiff claims that Defendants in constructing the pads, drainage, and roads, used or appropriated Plaintiff's stone, backfill, quarry material, and trees, which Plaintiff invested substantial money into creating. (*Compl.*, ¶¶ 12, 16, 26.) This, as alleged by Plaintiffs, was not sitework incidental to the extraction of oil and gas. Instead, Plaintiff claims its materials were used by Defendants in the actual construction of the roads, pad, and drainage. And, the Complaint further asserts that Defendants' use of these materials for such construction was without Plaintiff's consent or lawful justification, and for Defendants' benefit without compensation to Plaintiff. (*Id*. at ¶ 25.)

Accepting these allegations as true, Plaintiff has pled sufficient facts to raise a

11

reasonable expectation that discovery will reveal evidence that Plaintiff's stone, backfill, and other similar materials were converted by Defendants outside of their rights under the Lease. While Defendants may ultimately be correct that they acted in a manner consistent with the Lease, Plaintiff has adequately alleged that Defendants improperly converted its stone, backfill, and similar materials to construct the roads, pad, and drainage on its property. Thus, Plaintiff will be permitted to proceed on Count II of the Complaint.

Lastly, Anadarko requests that to the extent Count II is not dismissed, Plaintiff be required to file a more definite statement of its claim and alleged factual bases to support the claim. Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Few pleadings are proper subjects for a motion under Rule 12(e). *Pozarlik v. Camelback Assoc., Inc.*, No. 11-CV-1349, 2012 WL 760582, at *2 (M.D. Pa. Mar. 8, 2012). "Granting a Rule 12(e) motion is appropriate only when the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself.'" *Id*. (quoting *Sun Co. v. Badger Design & Constructors*, 939 F. Supp. 365, 368 (E.D. Pa. 1996)). Here, the Complaint is not so vague or ambiguous that Defendants are unable to respond. A more definite statement of Plaintiff's pleading will not be ordered.

### III. Conclusion

For the above stated reasons, the motions to dismiss will be granted in part and denied in part.

An appropriate order follows.

June 3, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge