IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALLEY ROD & GUN CLUB,<br><br>                    Plaintiffs<br><br>v.<br><br>CHESAPEAKE APPALACHIA, L.L.C.<br><br>                    Defendant<br><br>and<br><br>ANADARKO E&P COMPANY and STATOIL ONSHORE PROPERTIES INC.,<br><br>                    Co-Defendants | CIVIL ACTION – LAW<br><br>JURY TRIAL DEMANDED<br><br>No. 3:13-CV-00725-ARC |

STATEMENT OF MATERIAL FACTS SUBMITTED BY DEFENDANTS, CHESAPEAKE APPALACHIA, L.L.C., AND STATOIL ONSHORE PROPERTIES, INC. IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

1. The Plaintiff, Valley Rod & Gun Club (the "Club"), is a Pennsylvania not-for-profit corporation organized and existing under the laws of the Commonwealth Pennsylvania with a principal place of business in Pennsylvania. (Complaint ECF No.1:1, at 4; Exhibit A, ECF No. 1:1, at 13.).

2. Defendant, Chesapeake Appalachia, L.L.C. ("Chesapeake"), is a limited liability company organized in the State of Oklahoma with a principal place of business in the State of Oklahoma. (Chesapeake Answer ECF No. 22, at 2.).

3. Defendant, Anadarko E&P Company, LP ("Anadarko"), is a limited liability company organized under the laws of the State of Delaware with a principal place of business in the State of Delaware (Anadarko Answer ECF No.23, at 2.).

4. Defendant, Statoil USA Onshore Properties, Inc. ("Statoil"), is a corporation organized in the State of Texas with a principal place of business in the State of Texas. (Statoil Answer ECF No. 33, at 2).

5. The Club is and has been at all times relevant to this matter the owner of a 195.25 acre parcel of real estate improved with a lodge in Wilmot Township, Bradford County, Pennsylvania. (Complaint ECF No.1:1, at 4; Exhibit A, ECF No. 1:1, at 13.).

6. On July 20, 2006, the Club executed an Oil and Gas Lease (the "Lease") with Anadarko. Anadarko later assigned part of the lessee interest to Chesapeake. Statoil received its partial interest in the lease by way of an assignment from Chesapeake. (ECF No. 1:1, at 4, 5; Exhibit A, ECF No. 1:1, at 13.).

7. Pursuant to the Lease, the Club granted and leased the oil and gas underlying the property as well as the exclusive rights as may be necessary or convenient for the lessee to explore for, develop, and produce said oil and gas. Specifically, the Lease provides as follows:

> LESSOR hereby grants, demises, leases and lets exclusively to LESSEE the oil and gas, including coalbed methane gas, underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for LESSEE, at its election, to explore for, develop, produce, measure and market production from the premises, using methods and techniques which are not restricted to current technology, including the exclusive right to conduct geophysical and other exploratory tests; to conduct dewatering operations upon formations in which LESSEE plans to produce coalbed methane gas; to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, pipelines with appurtenant facilities, necessary or convenient for use in the production and transportation of products from the premises and from neighboring lands, and such rights shall survive the term of this agreement for so long thereafter as operations are continued on this Lease or adjacent lands; to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground regardless of the source thereof, including the injecting of gas therein and removing

>     the same therefrom; to protect stored gas; to operate, maintain,
>     repair, and remove material and equipment.

   (Exhibit A, ECF No. 1:1 at 13.)

8. In order to produce oil and gas from the property, it was necessary for Chesapeake to construct a well pad on the Club's property. On November 8, 2010, Chesapeake notified the Club via written correspondence that it was planning to construct an oil and gas well pad on the property, pursuant to the Lease. (Exhibit A, ECF No. 1:1, at 22; Todd Alexander Verified Statement of Facts, at 1, attached hereto as Exhibit "A").

9. Chesapeake began construction of a well pad on the property in March 2011. (Todd Alexander Verified Statement of Facts, at 1, attached hereto as Exhibit "A").

10. The part of the property on which the well pad was to be constructed was on an incline. A drill cannot operate on uneven or unleveled terrain. Thus, it was necessary to grade and level the site for the well pad. The well pad leveling was undertaken by utilizing the so-called "cut and fill" method. "Cut and fill" requires the movement of materials from the upper side of the slope to be moved to the lower side of a slope to create level terrain. (Todd Alexander Verified Statement of Facts, at 1, attached hereto as Exhibit "A").

11. Here, top soil was moved from the location of the well pad. Rock was cut from the upper slope and moved to the lower side of the slope. This process created a flat surface for the well pad. No material – neither rock nor top soil was removed from the Club's property. (Todd Alexander Verified Statement of Facts, at 1, attached hereto as Exhibit "A").

12. In this action the Club contends that Chesapeake must reimburse it for the rock and top soil materials cut from the top of the incline, moved to the bottom of the incline, and used to level the surface for the construction of the well pad. (Complaint ECF No.1:1, at 4; Exhibit A, ECF No. 1:1, at 8, 9.).

13. Pursuant to the lease, Chesapeake contends that it was legally entitled to grade or level a limited portion of the surface of the Club's lands for the construction of the well pad. In doing so, Chesapeake contends it had the legal right to move the rock and top soil materials at well pad location

without any further obligation to pay the Club. (Answer ECF No. 22, at 1-10.).

14. The surface materials used by Chesapeake in construction were entirely from the permitted limits of disturbance of construction. Chesapeake did not at any time take materials from area of the surface property outside of the limits of disturbance for use in constructing the wellpad. (Deposition of James Haddock "Haddock Tr.", at 105-107, attached hereto as Exhibit "F"; Deposition of Daniel Motichka "Motichka Tr.", at 56-57, attached hereto as Exhibit "G").

15. The Club never operated a stone or rock quarry on its property. It had not expended resources or otherwise utilized the at-issue rock and/or top soil. (Deposition of Daniel Nestorick, "Nestorick Tr.", at 107 excerpts attached hereto as Exhibit "B", Deposition of Daniel Motichka, "Motichka Tr.", at 44-45, 72-73 excerpts attached hereto as Exhibit "C",; Deposition of Art Kingston, "Kingston Tr.", at 36-37 excerpts attached hereto as Exhibit "D",; Deposition of Kevin Phillips, "Phillips Tr.", 46-47 excerpts attached hereto as Exhibit "E").

16. As the materials remain on-site, at the conclusion of Chesapeake's operations, the Club may use the at-issue rock and/or top soil for its own purposes. (Todd Alexander Verified Statement of Facts, at 1, attached hereto as Exhibit "A")

    Respectfully submitted,

    /s/ Michael J. O'Brien
    Oliver, Price and Rhodes
    Michael J. O'Brien, Esquire
    Attorney I.D. No.: 307321
    1212 South Abington Road
    P.O. Box 240
    Clarks Summit, PA 18411
    Tel: (570) 585-1200
    Fax: (570) 585-5100
    Email: mjob@oprlaw.com
    ATTORNEY FOR CHESAPEAKE APPALACHIA, L.L.C. AND STATOIL USA ONSHORE PROPERTIES, INC.