IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALLEY ROD & GUN CLUB, | |
| Plaintiff, | NO. 3:13-CV-0725 |
| v. | (JUDGE CAPUTO) |
| CHESAPEAKE APPALACHIA, LLC, | |
| Defendant, | FILED SCRANTON |
| ANADARKO E&P COMPANY, LP and STATOIL ONSHORE PROPERTIES, INC., | MAR 2 9 2017 |
| Co-Defendants. | Per_____ DEPUTY CLERK |

## MEMORANDUM

Presently before me are motions for summary judgment filed by Defendants Statoil USA Onshore Properties, Inc. ("Statoil") and Chesapeake Appalachia, LLC ("Chesapeake") (Doc. 77), and Defendant Anadarko E&P Onshore LLC ("Andarko") (Doc. 73). This case arises out of the construction of a natural gas well pad by Defendant Chesapeake on Plaintiff Valley Rod & Gun Club's ("Plaintiff") property, pursuant to an executed oil and gas lease. Plaintiff claims that Chesapeake's use of rock, fill, mulch, and other surface material from Plaintiff's property in constructing the well pad constituted a "misappropriation" or "conversion" of that material. However, because both the lease and Pennsylvania law permit a lessee to access and use as much of the surface property as is "reasonably necessary" or "necessary and convenient" to extract the oil and gas, and because Plaintiff failed to provide sufficient evidence showing the existence of a genuine dispute as to any material fact, Defendants' summary judgment motions will be granted.

### I. Background

Plaintiff, a Pennsylvania not-for-profit corporation, owns acreage and a lodge in Wilmot Township, Bradford County, Pennsylvania. (Doc. 1-1, at 4, *Compl.*, ¶ 1). On July 20,

2006, Plaintiff executed an Oil and Gas Lease (the "Lease") with Defendant Anadarko. Anadarko later assigned part of the lessee interest to Defendant Chesapeake. Defendant Statoil received its partial interest in the lease by way of an assignment from Chesapeake. (*Id.* at ¶ 5.) Pursuant to the Lease, Plaintiff leased the oil and gas underlying its property. Specifically, the Lease provides as follows:

> LESSOR hereby grants, demises, leases and lets exclusively to LESSEE the oil and gas, including coalbed methane gas, underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for LESSEE, at its election, to explore for, develop, produce, measure and market production from the premises, using methods and techniques which are not restricted to current technology, including the exclusive right to conduct geophysical and other exploratory tests; to conduct dewatering operations upon formations in which LESSEE plans to produce coalbed methane gas; to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, pipelines with appurtenant facilities, necessary or convenient for use in the production and transportation of products from the premises and from neighboring lands, and such rights shall survive the term of this agreement for so long thereafter as operations are continued on this Lease or adjacent lands; to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground regardless of the source thereof, including the injecting of gas therein and removing the same therefrom; to protect stored gas; to operate, maintain, repair, and remove material and equipment.

(Doc. 1-1, at 13). According to the Complaint, the Lease and its recitations were also meant to promote public safety and protect the hunting, farming, recreation, and business operations of Plaintiff. (*Compl.*, ¶ 8).

By a letter dated November 8, 2010, Chesapeake notified Plaintiff that it was planning to drill gas wells on Plaintiff's property pursuant to the Lease. (Doc. 1-1, at 21).

In connection with installing the well pad, Chesapeake installed roads, access, and drainage. (*Compl.*, ¶ 9). It is undisputed that Chesapeake constructed the well pad, roads, and appurtenant facilities using, in part, rock, soil, mulch, and other surface material from Plaintiff's property. (*Id.* at ¶¶ 12, 16).

Based on the foregoing events, Plaintiff commenced this action in the Court of Common Pleas of Bradford County, Pennsylvania. (Doc. 1, at 3). The Complaint consists of two counts. Count I asserts a trespass claim against Defendants. Count II asserts a claim

for misappropriation/conversion of rock, fill, and other material from Plaintiff's property, in that "Defendants have made unauthorized, improper, or unlawful use of Plaintiff's property without permission, right, ownership or proper consent or agreement." (*Compl.*, ¶ 25).

On March 19, 2013, the action was removed to this Court. (Doc. 1, at 1). Subsequently, on March 26, 2013, both Anadarko and Chesapeake filed motions to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On June 3, 2013, the Court dismissed with prejudice Count I of Plaintiff's Complaint against Defendants Chesapeake and Anadarko. (Doc. 20). On October 7, 2013, the Court, in the interest of judicial economy, ordered that Count I be dismissed as a claim against Defendant Statoil as well. (Doc. 34).

The matter was referred to mediation on July 14, 2015. (Doc. 56). On September 25, 2015, the mediator issued a report advising the Court that settlement was not reached. (Doc. 60).

On May 4, 2016, Defendants filed the instant motions for summary judgment. (Docs. 73, 77). Following a lengthy briefing period, the motions are now ripe for disposition.

## II. Discussion

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the

applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d

4

265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.   Analysis**

Under the terms of the lease, as well as under the applicable law, Defendants were legally entitled to access and use as much of Plaintiff's surface property as was "reasonably necessary" or "necessary and convenient" to extract the gas and effectuate the lease. Thus, Plaintiff's contention that Defendants "misappropriated" or "converted" rock, soil, and other surface material when Chesapeake used that material to construct the well pad fails as a matter of law. (Doc. 86, at 7).

I address each source of Defendants' legal entitlement in turn.

**1.   The Applicable Law in Pennsylvania and Other Jurisdictions**

"[T]he law of this Commonwealth is that one who has the right to remove subsurface minerals, also has the right to enter onto the surface and to make reasonable use of a portion of the surface to retrieve his property." *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 511 (Pa. Super. Ct. 2013). *See also Belden & Blake Corp. v. Com., Dep't of Conservation & Nat. Res.*, 600 Pa. 559, 969 A.2d 528, 532 (2009). As the Pennsylvania Supreme Court has held,

> [a]s against the owner of the surface, each of the several purchasers [of subsurface rights] would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his underlying estate, and to occupy so much of the surface, beyond the limits of his shaft, drift, or well, as may be necessary to operate his estate, and to remove the product thereof.

*Chartiers Block Coal Company v. Mellon*, 152 Pa. 286, 25 A. 598 (1893) *See also Belden & Blake Corp.*, 969 A.2d at 532 (stating that the mineral or oil and gas estate is the dominant estate and entails the right to use as much surface land as reasonably necessary for subsurface extraction of material). The Pennsylvania Supreme Court has also repeatedly reaffirmed the general rule of law that, when anything is granted, all the means of attaining it and all the fruits and effects of it are also granted; when uncontrolled by express words of restriction, all the powers pass which the law considers to be incident to the grant for the full and necessary enjoyment of it. *Oberly v. H.C. Frick Coke Company*, 262 Pa. 83, 104 A. 864 (1918).

The implied right to enter and use the surface to effectuate the explicit grant of subsurface rights, however, is subject to certain limitations. For example, in *Turner v. Reynolds*, 23 Pa. 199, 206 (1854), the Pennsylvania Supreme Court held that "[o]ne who has the exclusive right to mine coal upon a tract of land has the right of possession even as against the owner of the soil, so far as it is *necessary* to carry on his mining operations." (emphasis added). Several decades later, the Court held that "[t]he bare right to work carries with it the right to use so much of the surface as is *reasonably necessary*." *Oberly*, 104 A. at 866 (emphasis added).

Several other courts have also addressed the use of surface materials in the context of oil and gas development and have held that, as the dominant estate, the oil and gas owner has an implied right to use as much of the surface estate as reasonably necessary. *See United States v. Minard Run Oil Co.*, 1980 U.S. Dist. LEXIS 9570, at *17-18 (W.D. Pa. Dec. 16, 1980) ("[D]efendant possesses, inter alia, the right of access for roads and pipelines to wells drilled by it, the right to clear areas for road and pipeline access to the extent reasonably necessary to the exercise of its oil and gas rights, the right of possession of well sites, and the right to such timber only as is necessary to constitute construction

materials in the structures on wells or drilling rigs."); *see also Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 103 (Tex. 1984) ("It is reasonable to assume a grantor who expressly conveys a mineral which may or must be removed by destroying a portion of the surface estate anticipates his surface estate will be diminished when the mineral is removed."); *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 810-11 (Tex. 1972) (holding, in the context of an oil and gas lease, that the lessee has an implied grant of reasonable use which "extends to and includes the right to use water from the leased premises in such amount as may be reasonably necessary to carry out the lessee's operations under the lease").[1]

Thus, so long as Defendants engaged in activities that were "reasonably necessary" in the extraction of the natural gas underlying Plaintiff's property, Pennsylvania law precludes Plaintiff's claim that Defendants either misappropriated[2] or converted[3] the surface materials by using them to construct the well pad.

### 2. The Terms of the Oil and Gas Lease

Because an oil and gas lease is in the nature of a contract, it is controlled by principles of contract law. *See Willison v. Consolidation Coal Co.*, 536 Pa. 49, 54, 637 A.2d

---

[1] Plaintiff argues that Defendants' reliance on cases from other jurisdictions is "inappropriate." (Doc.86, at 5). I disagree. Pennsylvania courts have repeatedly stated that decisions from other jurisdictions may be considered as persuasive authority, given that the law of this Commonwealth governing oil and gas leases is still largely in the development phase. *See Shedden v. Anadarko E & P Co., L.P.*, 2014 PA Super 53, 88 A.3d 228, 233 (2014), *aff'd sub nom.* 136 A.3d 485 (Pa. 2016) ("Although we acknowledge that the pronouncements of sister states are not binding authority on our courts, such decisions may be considered as persuasive authority.").

[2] Misappropriation is "[t]he application of another's property or money dishonestly to one's own use." *Westport Ins. Corp. v. Hanft & Knight P.C.*, 523 F. Supp. 2d 444, 460 (M.D. Pa. 2007) (citation omitted).

[3] Conversion, under Pennsylvania law, is defined as "the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification." *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 844 (E.D. Pa. 1993).

7

979, 982 (1994). "The accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Id.* While ambiguous writings are interpreted by the finder of fact, unambiguous contracts are interpreted by the court as a matter of law. *Cmty. Coll. of Beaver Cty. v. Cmty. Coll. of Beaver Cty., Soc. of the Faculty*, 473 Pa. 576, 592, 375 A.2d 1267, 1275 (1977). A contract is "ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986). "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." *Id.*

Here, Defendants obtained the exclusive right to recover the oil and gas underlying Plaintiff's property. As the owners of the right to enter and recover the gas, Defendants had the right to use the surface of Plaintiff's property to explore for, develop and produce oil and gas from Plaintiff's property. Specifically, Plaintiff granted Defendants "such exclusive rights as may be *necessary or convenient* for LESSEE, at its election, to explore for, develop, produce, measure and market production from the premises. . . ." (Doc. 1-1, at 13) (emphasis added).[4] As Defendants explain,

> [t]he part of the property on which the well pad was to be constructed was on an incline. A drill cannot operate on uneven or unleveled terrain. Thus, it was necessary to grade and level the site for the well pad. The well pad leveling was undertaken by utilizing the so-called "cut and fill" method. "Cut and fill" requires the movement of materials from the upper side of the slope to be moved to the lower side of a slope to create level terrain. Here, top soil was moved from the location of the well pad. Rock was cut from the upper slope and moved to the lower side of the slope. This process created a flat surface for the well pad.

---

[4] Plaintiff claims that Defendants' "proposal to enter into a Surface Agreement for agreed to consideration is clear evidence that the subject Oil and Gas Lease does not permit the use of Plaintiff's surface materials for construction of the well pad." (Doc. 86, at 2). In *Humberston*, the Pennsylvania Superior Court considered and rejected this very argument, holding that the "unexecuted surface lease . . . does not affect the Lease . . . ." 75 A.3d at 512.

8

Doc. 76, at 3.

The case is analogous to *Humberston v. Chevron U.S.A., Inc.*, 2013 PA Super 238, 75 A.3d 504, 512 (2013). In *Humberston*, oil and gas lessors brought quiet title and trespass action against lessee and lessee's contractor hired to build a large fresh water impoundment on lessors' land. The Superior Court of Pennsylvania held that the lessee had the right to use the surface of lessors' property so far as was necessary to explore for, develop and produce natural gas, including the construction of a large fresh water impoundment. Specifically, the court pointed out that,

> [t]he language of the Lease and Pennsylvania law allow for the use of the surface area of the property as is reasonably necessary or convenient to develop the natural gas under the Humberstons' property and that of property constituting the Humberston Unit. There is no apparent ambiguity or vagueness in the language of the Lease.

*Id.* at 512.

The lease in the instant case also contains the operative phrase "necessary or convenient," which the court in *Humberston* found to be unambiguous. Moreover, there is no dispute that in order to extract oil and gas from Plaintiff's property, Defendants needed to construct a well pad. This process requires the use of significant quantities of rock and soil, and, as Defendant Chesapeake advises, the "cut and fill" method "is the same technique used by home builders and for other construction projects that are undertaken on uneven land." (Doc. 75, at 5).

However, even if the interpretation of the term "necessary or convenient" and its application to the instant case were left up to the jury, as Plaintiff argues, a grant of summary judgment would still be appropriate at this time. This is so because, as explained in more detail below, Plaintiff, similarly to the plaintiffs in *Humberston*, does not present any evidence that the use of the surface material was inconvenient or unnecessary to the extraction of the gas. *Humberston*, 75 A.3d at 512.

9

### 3. The Absence of a Genuine Issue of Material Fact

As required by this Court's Local Rule 56.1, Defendants' summary judgment motions were properly "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." (*See* Docs., 73, 76). Plaintiff, however, did not respond to the numbered paragraphs set forth in the moving parties' statements, as required by the same Rule. Thus, Plaintiff failed to deny many of the assertions in Defendants' statements of facts. As the Rule holds, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

Plaintiff did submit its own statement of facts, but, as already mentioned, it does not comport with LR 56.1. Thus, because Plaintiff's statement of facts does not respond to Defendants' statements, "the court will adopt [Defendants'] statement[s] of facts, except for those facts *clearly* disputed by plaintiff with adequate record references." *U.S. ex rel. Paranich v. Sorgnard,* 286 F. Supp. 2d 445, 447 (M.D. Pa. 2003), *aff'd*, 396 F.3d 326 (3d Cir. 2005) (emphasis added).

> Here, Defendants argue that,
>
> [c]onstructing a well pad to drill wells is necessary and convenient to develop and produce Defendants' natural gas, and using on-site materials from within the permitted limits of construction disturbance to construct the well pad is also necessary and/or convenient to develop and produce the gas. There is no evidence in this record to suggest that Chesapeake's use of surface materials from within the limits of disturbance was not "necessary" or "convenient" for Chesapeake, "at its election" to "explore for, develop, produce, measure and market production from the premises."

Doc. 73, at 21. Plaintiff never denies these assertions. Specifically, Plaintiff never argues that the construction of the well pad and the use of the surface material was not "convenient or necessary" or "reasonably necessary." Thus, Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.,* 477

U.S. at 322-23, 106 S.Ct. 2548. As such, based on Plaintiff's response to the motions for summary judgment, I find that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

Plaintiff, for instance, avers that "[t]he subject well pad built by contractors of Defendant, Chesapeake, is believed to be the largest or the [second] largest well pad in Bradford County." (Doc. 85, at 4). Plaintiff, however, never elaborates on this assertion or connects it to any argument. Thus, it is unclear what the statement proves or is intended to prove. Moreover, Plaintiff provides no evidence supporting the claim. Thus, even if it is true that the well pad is the largest in the county, Plaintiff is not any closer to making the requisite showing that there exists a genuine issue for trial that the use of rock, soil, and other surface material was unnecessary or inconvenient for Defendants.

Next, Plaintiff avers that "[t]he surface stone and soil taken and converted for use . . . was dynamite blasted or jack-hammered and then bulldozed out from Plaintiff's surface stone and soil material and converted to fill and gravel, for support and construction by Defendants' contractor of the well pad." (Doc. 85, at 4). Even if this is true, the Court is left guessing what the fact that the stone was "was dynamite blasted or jack-hammered" is intended to show. In no way does that assertion show that the use of the surface material was unnecessary or inconvenient for Defendants to build a well pad, nor does it constitute any evidence showing that there exists a genuine issue for trial with regards to the reasonableness of the use of the surface material.

Similarly, Plaintiff avers that "[t]he amount of Plaintiff's stone and soil excavated or blasted, and used to construct the well pad by Defendants then contractor was in excess of 70,000 cubic yards." (Doc. 85, at 4). Again, Plaintiff does not elaborate any further on this assertion or how it relates to the necessity or convenience of the use of surface material in the construction of the well pad. Is 70,000 cubic yards excessive? Is it the industry norm?

11

Does it differ from the typical "cut and fill" operations? And, more importantly, was it "reasonably necessary" or "necessary and convenient" to extract the gas? The Court is left guessing.

Finally, Plaintiff asserts that it "does not *believe* Defendants saved money by building the well pad where they did." (Doc. 85, at 5) (emphasis added). Plaintiff's *belief* is plainly insufficient at a summary judgment stage, especially when it is not supported by any other evidence, such as experts' opinions, estimates, calculations, or industry norms or standards. Even if Plaintiff had some evidence to support its opinion that Defendants did not "save[] money by building the well pad where they did," such an assertion would still not constitute evidence showing that the use of the surface material was unnecessary or inconvenient for Defendants.

Thus, after a careful review of the record, I find that Plaintiff has not adduced more than a "mere scintilla of evidence" in its favor, as required by *Anderson*, 477 U.S. at 249, in order to challenge the assertion that Defendants' use of rock, soil, and other surface material did not go beyond what was reasonably necessary or convenient to effectuate the lease.

Defendants, on the other hand, show with sufficient support that "Chesapeake constructed the well pad, roads, and appurtenant facilities using, in part, rock, soil, timber, and other surface material from within the permitted limits of construction disturbance." (Doc. 73, at 6; Doc. 75 at 9). In fact, even Plaintiff acknowledges that Chesapeake's construction activities remained within the permitted limits of disturbance. (Doc. 73, at 112, 115-16). Moreover,

> [t]he part of the property on which the well pad was to be constructed was on an incline. A drill cannot operate on uneven or unleveled terrain. Thus, it was necessary to grade and level the site for the well pad. The well pad leveling was undertaken by utilizing the so-called "cut and fill" method. "Cut and fill" requires the movement of materials from the upper side of the slope to be moved to the lower side of a slope to create level terrain.

12

(Doc. 76, at 3). Further, the use of the rock may have been convenient in light of the well-supported fact that "[t]he Club never operated a stone or rock quarry on its property. It had not expended resources or otherwise utilized the at-issue rock and/or top soil." (Doc. 76, at 4). In addition, "[a]s the materials remain on-site, at the conclusion of Chesapeake's operations, Plaintiff may use the at-issue rock and/or top soil for its own purposes." (Doc. 76, at 4). Such unrebutted statements indicate that the use of the surface materials may, in fact, have been convenient to Defendants.

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Jones v. Southcentral Employment Corporation*, 488 F. Supp. 2d 475, 480 (M.D. Pa. 2007) (citing *Anderson*, 477 U.S. at 248-49). Here, Plaintiff's evidentiary basis, composed of beliefs, unsupported assertions, and inconsequential averments, would be insufficient to convince a reasonable jury to find for Plaintiff - not because the record is unpersuasive, but because it is largely non-existent. *See Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) (The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial.") Plaintiff, as the non-movant, had a burden to respond with facts in the record that contradict the facts identified by the moving party. *Id.* at 480. It failed to do so.

Nevertheless, Plaintiff argues that the question of necessity and convenience is a question for the jury. (Doc. 86, at 2). Not so; it is only a jury question if there is a genuine issue of material fact. Because I find that Defendants' uncontroverted assertions sufficiently show that there is no genuine issue of material fact, I will grant Defendants' motions for summary judgment.[5]

---

[5] I note here that, despite Plaintiff's insistence, there are no remaining claims in this case. Plaintiff's claim relating to basement flooding is in no way related to the torts of conversion

### III. Conclusion

For the above stated reasons, Defendants' motions for summary judgment (Docs. 73, 77) will be granted.

An appropriate order follows.

March 29, 2017
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

---

or misappropriation. To the extent that it is related to the trespass claim, I have already dismissed that claim at the motion to dismiss stage. (Docs. 19, 20).